**CANDIS MITCHELL**
California Bar No. 242797
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Candis_Mitchell@fd.org

Attorneys for Mr. Jose Raymundo Contreras-Hernandez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JOHN A. HOUSTON)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>**JOSE RAYMUNDO CONTRERAS-HERNANDEZ**,<br><br>　　　　　Defendant. | CASE NO. 07CR3190-JAH<br><br>STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS |

## I.

## STATEMENT OF FACTS[1]

On September 26, 2005, it is alleged that Mr. Contreras-Hernandez sustained a conviction for violation of Cal. Penal Code § 653f(b), Solicitation to Commit Murder. The circumstances surrounding the alleged conviction reveal that Mr. Contreras-Hernandez had approached a confidential informant working for the Watsonville Police Department to inquire about hiring an individual to dispatch his ex-wife. The confidential informant then put Mr. Contreras-Hernandez in contact with an individual that Mr. Contreras-Hernandez believed to be a "hit-man," but was in actuality an undercover police officer. Ms. Contreras was never harmed during the course of the offense. Mr. Contreras-Hernandez never exchanged funds with the officer for the request and he was arrested after his former wife was informed of Mr. Contreras-Hernandez's plans.

---

[1] Facts referred to in this memorandum are based on information provided by the government. Mr. Contreras-Hernandez reserves the right to challenge them at any time.

According to information provided by the government, on September 26, 2007, an assistant field office director in Imperial, California, ordered Mr. Contreras-Hernandez removed from the United States. See Ex. A (Final Administrative Removal Order). This order was executed on September 27, 2007, with Mr. Contreras-Hernandez being removed from the United States. See Ex. B (Warrant of Removal/Deportation) The basis for Mr. Contreras-Hernandez's expedited removal was an alleged conviction for an aggravated felony after admission into the United States.

On October 27, 2007, Border Patrol Agent M. Noland came into contact with ten people in an area near Corte Madera Ranch, thirteen miles north of the border and nine miles east of the Tecate, California, Port of Entry. After brief questioning to establish that the individuals did not posses permission to legally enter the United States, Mr. Contreras-Hernandez was arrested and transported to the Campo Border Patrol Station for processing.

At the station it was discovered that Mr. Contreras-Hernandez had an immigration and criminal history. It is alleged that he was read his Miranda rights and chose to invoke them. On November 27, 2007, an Indictment was handed down charging Mr. Contreras-Hernandez with violating 8 U.S.C. §1326 (a) and (b), deported alien found in the United States who had been removed subsequent to October 28, 2005.

This motion follows.

## II.

## MOTION TO DISMISS INDICTMENT DUE TO AN INVALID REMOVAL.

**A.      Summary of Argument.**

Mr. Contreras-Hernandez was expeditiously removed from the United States, and denied a full and complete hearing before an immigration judge ("IJ"), because an acting assistant officer-in-charge ("assistant") concluded that Mr. Contreras-Hernandez had previously been convicted of an aggravated felony. In the deportation proceeding, Mr. Contreras-Hernandez was denied his right to counsel as he was not provided with a list of free legal services. Additionally, as Mr. Contreras-Hernandez's alleged conviction for solicitation of murder does not constitute a crime of violence, expedited removal was improper. These errors violated Mr. Contreras-Hernandez's due process rights.

1  As such, the government may not rely on Mr. Contreras-Hernandez's 2007 removal in prosecuting him under 8 U.S.C. § 1326. As there is no other removal the government may rely on in prosecuting him, Mr. Contreras-Hernandez moves this Court for an order dismissing the Indictment.

**B.  Mr. Contreras-Hernandez's 2007 Removal May Not Serve as the Basis of a Section 1326 Prosecution.**

"A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047 (9th Cir. 2004) (citing United States v. Mendoza-Lopez, 481 U.S. 828, 837-38 (1987)). To "sustain a collateral attack under § 1326(d), a defendant must, within constitutional limitations, demonstrate (1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) that the entry of the order was fundamentally unfair." Id.

**1.  Mr. Contreras-Hernandez is Exempt From § 1326(d)'s Exhaustion Requirement.**

Following his 2007 expedited removal hearing, Mr. Contreras-Hernandez did not seek administrative review of the removal order. Normally, a defendant charged with violating section 1326 who wishes to collaterally challenge his removal must have exhausted any administrative remedies available to him. See 8 U.S.C. § 1326 (d)(1). However, "there is no requirement of [prudential] exhaustion where resort to the agency would be futile. Thus, where the agency's position on the question at issue appears already set, and it is very likely what the result of recourse to administrative remedies would be, such recourse would be futile and is not required." El Rescate Legal Services, Inc. v. Executive Office for Immigration Review, 959 F.2d 742, 747 (9th Cir.1991) (quotation marks and citations omitted).

Further, there is no appellate recourse from a final order of removal for an alien who is removable because of a conviction for an aggravated felony. United States v. Garcia-Martinez, 228 F.3d 956, 958 (9th Cir. 2000). Because Mr. Contreras-Hernandez's alleged deportable offense, solicitation of murder, was characterized as an aggravated felony, the Immigration and Naturalization Act prohibits judicial review of any final order of removal. See 8 U.S.C. § 1252(a)(2)(C). Therefore, if Mr. Contreras-Hernandez was incorrectly deemed have been convicted of an aggravated felony, he would have presumptively been denied any right to

administrative remedies. As a result, because Mr. Contreras-Hernandez was not informed of his right to administrative review, and any review would be futile, he is exempt from the exhaustion requirement of section 1326(d).

**2.   Mr. Contreras-Hernandez was Denied Judicial Review.**

A defendant seeking to collaterally challenge a deportation under § 1326(d) must show that he was improperly denied the opportunity for judicial review. See 8 U.S.C. § 1326(d)(2). The failure to properly inform a person of his right to appeal a removal order satisfies this requirement. See Ubaldo-Figueroa, 364 F.3d at 1050; United States v. Zarate-Martinez, 133 F.3d 1194, 1197 (9th Cir. 1998), cert denied, 525 U.S. 849 (1998). Here, because Mr. Contreras-Hernandez was not informed of the right to appeal, he improperly denied the opportunity for judicial review.

**3.   Mr. Contreras-Hernandez's Removal Was Fundamentally Unfair.**

To successfully challenge the government's use of a prior removal in a section 1326 prosecution, a defendant must show that the entry of that removal order "was fundamentally unfair." 8 U.S.C. § 1326(d)(3). "An underlying removal order is 'fundamentally unfair' if: '(1) [a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.'" Ortiz-Lopez, 385 F.3d at 1204 (quoting Zarate-Martinez, 133 F.3d at 1197).

**a.   Mr. Contreras-Hernandez's removal violated due process.**

Mr. Contreras-Hernandez's removal violated due process based on the following reasons; one, Mr. Contreras-Hernandez's alleged conviction for solicitation of murder does not constitute aggravated felony, thus expedited removal was improper; two, Mr. Contreras-Hernandez was denied his constitutional and statutory right to counsel as he was not presented with a list of free legal services. These errors, individually and collectively, resulted in Mr. Contreras-Hernandez's removal being fundamentally unfair.

**i.   Mr. Contreras-Hernandez should not have deported via an expedited removal as solicitation of murder is not an aggravated felony**

On June 25, 2007, the DHS served Mr. Contreras-Hernandez with a Notice to Appear. See Ex. C (Notice of Intent to Issue a Final Administrative Removal Order). The Notice alleged removability under 8 U.S.C. § 1227(a)(2)(iii) because Mr. Contreras-Hernandez had been convicted of a "crime of violence" classified as an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F). The Notice alleges the Mr. Contreras-

Hernandez was convicted on September 26, 2005, in the California Superior Court in the County of Santa Cruz for Solicitation of Murder in violation of Cal. Penal Code § 653f(b). While the crime of the alleged conviction is a very serious offense, it does not allege either a "conspiracy" nor an "attempt." Nor do the elements of solicitation do not involve physical violence or threat. As the crime of solicitation is completed once another person has been enticed to commit a crime, solicitation to commit murder in and of itself is not a crime of violence.

Cal. Penal Code § 653f(b) reads as follows: "Every person who, with the intent that the crime be committed, solicits another to commit or join in the commission of murder shall be punished by imprisonment in the state prison for three, six, or nine years."

In the instant case, there was never any violence or risk of violence. The individual that it is alleged that Mr. Contreras-Hernandez solicited was a fully cooperating government informant. Upon being approached by Mr. Contreras-Hernandez, he immediately contacted police officers who as part of an investigation met with and interacted with Mr. Contreras-Hernandez. During the course of the investigation, no funds were ever paid and the intended target was in protective custody or out of the country.

A "crime of violence" is defined in 8 U.S.C. § 1101(a)(43)(F) by reference to the definition in 18 U.S.C. § 16, which provides:

> The term "crime of violence" means-
> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

As to § 16(a), that statute requires that the crime of conviction include "an element of the use, attempted use, or threatened use of force." Cal. Penal Code § 653f(b) does not include such an element. Rather, it does not require that the murder actual be completed nor even attempted. Instead, an individual can be convicted merely upon enticement of another with the intent to harm an individual. See People v. Hall, 83 Cal.App.4th 1084, 1094 (2000). As a result, the California statute for solicitation fails to meet the requirements under 18 U.S.C. § 16(a) to be qualified as a crime of violence.

Turning to § 16(b), the issue becomes whether the crime of conviction "involves a substantial risk" of the use of force. Arguably, solicitation without actual acceptance does not involve risk. The attempt to hire itself, alone, is criminal. The crime of solicitation is complete when the solicitation is made -- when the

1   soliciting message is received by its intended recipient. No steps further need be taken towards its completion
2   for and individual to be convicted. See People v. Cook, 151 Cal.App.3d 1142, 1145 (1984).  Force comes to
3   play only if the offer is accepted, whether or not there is any further act or attempt. Here there was never an
4   acceptance, as the individual that Mr. Contreras-Hernandez worked with was an undercover police officer,
5   and therefore never a real or even theoretical risk of the use of force, let alone a substantial risk of force.
6       For there to have been a risk of force there would have to have been a different crime of conviction.
7   As a result, Mr. Contreras-Hernandez was denied his due process by incorrectly receiving an expedited
8   removal and being denied a hearing before an immigration judge solely on the basis of an erroneously
9   determined status of an "aggravated felon."

### ii.    Mr. Contreras-Hernandez was denied his right to counsel because he was not given a copy of free legal services.

12      Mr. Contreras-Hernandez was not provided with a list of free legal services.  Immigration regulations
13  require the DHS to provide the alien with a list of available free legal services programs.  8 C.F.R. § 238.1;
14  see also Acewicz v. INS, 984 F.2d 1056, 1062 (9th Cir. 1993) (the IJ must determine whether the alien has
15  received the list of free legal services and whether he desires representation).  The requirement that the INS
16  inform defendants that free legal services exist must be scrupulously observed.  Furthermore, it is critical that
17  this information be provided to defendants in their native language. Otherwise, they cannot make meaningful
18  use of it.  See He v. Ashcroft, 328 F.3d 593, 598 (9th Cir. 2003) (citing Perez-Lastor v. INS, 208 F.3d 773,
19  778 (9th Cir. 2000)) ("[A] competent translation is fundamental to a full and fair hearing.  If an alien does not
20  speak English, deportation proceedings must be translated into a language the alien understands."). For
21  example, in Ubaldo-Figueroa, the Ninth Circuit affirmed the district court's conclusion that the INS violated
22  the defendant's due process rights because his removal proceedings were not translated into Spanish. 364
23  F.3d at 1047. As a result, the defendant "was not properly advised of the grounds on which he was being
24  deported, his possible eligibility of relief from deportation, or his right to appeal his removal order in violation
25  of his right to due process of law."  Id.  The Ninth Circuit found that these due process violations prejudiced
26  the defendant. Id. at 1050-51.  Moreover, the DHS's failure to provide Mr. Contreras-Hernandez with a list
27  of free legal services further compounded the errors of improperly placing him in expedited proceedings.

1  Therefore, the failure to provide Mr. Contreras-Hernandez with the required of list of free legal services
2  violated his right to due process.

3          **b.**      **Mr. Contreras-Hernandez suffered prejudice at his removal hearing.**

4      Mr. Contreras-Hernandez suffered prejudice as a result of this due process violation. To demonstrate
5  prejudice at his removal hearing, Mr. Contreras-Hernandez "does not have to show that he actually would
6  have been granted relief. Instead, he must only show that he had a 'plausible' ground for relief from
7  deportation." Ubaldo-Figueroa, 364 F.3d 1042 at 1050 (internal citation omitted). Once a defendant has
8  made a prima facie showing of prejudice, it is the government burden "'to demonstrate that the procedural
9  violation could not have changed the proceedings' outcome.'" United States v. Gonzalez-Valerio, 342 F.3d
10 1051, 1054 (9th Cir. 2003); see also Ortiz-Lopez, 385 F.3d at 1205 (quoting same).

11     In this case, Mr. Contreras-Hernandez suffered prejudice on a number of grounds. First, the DHS
12 erred in determining that Mr. Contreras-Hernandez was subject to an expedited removal under section 1228
13 because of a conviction for an aggravated felony. Additionally, Cal. Penal § 653f(b) fails to meet the
14 necessary burden to be categorized as a "crime of violence" thus Mr. Contreras-Hernandez fails to be
15 qualified as an aggravated felon. Thus, the proceedings should have been dismissed against Mr.
16 Contreras-Hernandez as he suffered prejudice as result of this due process violation.[2]

17     Second, Mr. Contreras-Hernandez was denied his statutory and constitutional rights to counsel. Mr.
18 Contreras-Hernandez was not provided with a list of free legal services. These errors result in prejudice *per*
19 *se*. See Strickland v. Washington, 466 U.S. 668, 692 (1984) ("Actual or constructive denial of the assistance
20 of counsel altogether is legally presumed to result in prejudice."); see also Biwot, 403 F.3d at 1100 ("With
21 an attorney, [Biwot] would not have been forced to proceed pro se, to present a case with no evidence, to

---

[2] However, if this Court believes that the proper remedy for this violation was subjecting Mr. Contreras-Hernandez to the normal removal proceedings under section 1229a, prejudice is still established. In a normal removal proceeding, it is certainly plausible that Mr. Contreras-Hernandez would have been granted an opportunity to voluntarily leave the United States. Because the DHS does not have competent evidence supporting a conviction for an aggravated felony, Mr. Contreras-Hernandez would still be entitled to a fast-track voluntary departure. See 8 CFR § 1240.26(b)(1)(i)(E). Thus, Mr. Contreras-Hernandez was prejudiced by the due process violation at his 2007 removal hearing. Mr. Contreras-Hernandez had a "plausible" basis for relief in 2007 because, based on the competent evidence in the A-file, he qualified for, and met all the regulatory requirements of, a form of relief.

1  answer the IJ's inquiries without any idea of their legal significance, or to purport unwittingly to waive his
2  appeal."). Moreover, at a minimum, the denial of the right to counsel resulted in prejudice because with the
3  assistance of counsel, the case would have been transferred to an IJ because the DHS lacked competent
4  evidence to subject him to an expedited removal. Therefore, the denial of counsel at the deportation hearing
5  resulted in prejudice for Mr. Contreras-Hernandez.

6  Finally, even if this Court believes that the above errors are insufficient to prove prejudice, then this
7  Court should view the cumulative effect of these errors. In cases where "no single trial error examined in
8  isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still
9  prejudice a defendant." United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir.1996). Here, all of the error
10 above results, at a minimum, result in the outcome of the 2007 removal being fundamentally unfair.

**C.      Summation.**

Mr. Contreras-Hernandez's due process rights were violated at his removal hearing in 2007. He suffered prejudice as a result of that due process violation. The government may not therefore use Mr. Contreras-Hernandez's 2007 removal as a basis for its prosecution. As there is no other removal orders on which the government may rely, Mr. Contreras-Hernandez requests that this Court dismiss the indictment against him.

### III.

### CONCLUSION

For the foregoing reasons, Mr. Contreras-Hernandez respectfully requests that this Court grant the above requested motion.

Respectfully submitted,

Dated: February 5, 2008

*s/ Candis Mitchell*
**CANDIS MITCHELL**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Contreras-Hernandez
Candis_Mitchell@fd.org