1  KAREN P. HEWITT
   United States Attorney
2  PETER J. MAZZA
   Assistant U.S. Attorney
3  California State Bar No. 239918
   United States Attorney's Office
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-5528
   Fax: (619) 235-2757
6  Email: peter.mazza@usdoj.gov

7  Attorneys for Plaintiff
   United States of America
8

9                         UNITED STATES DISTRICT COURT

10                       SOUTHERN DISTRICT OF CALIFORNIA

11
   UNITED STATES OF AMERICA,           ) Case No. 07CR3190-JAH
12                                     )
              Plaintiff,               )
13                                     ) **GOVERNMENT'S TRIAL MEMORANDUM**
         v.                            )
14                                     )
   JOSE RAYMUNDO                       ) Date:    May 13, 2008
15       CONTRERAS-HERNANDEZ,          ) Time:    9:00 a.m.
                                       ) Court:   Hon. John A. Houston
16            Defendant.               )
                                       )
17  _____)

18        Comes now the Plaintiff, the UNITED STATES OF AMERICA, by and

19  through its counsel, Karen P. Hewitt, United States Attorney, and

20  Peter J. Mazza, Assistant U.S. Attorney, and hereby files its Trial

21  Memorandum.

22  //

23  //

24  //

25  //

26  //

27  //

28  //

**I**

**STATEMENT OF THE CASE**

**A.   INDICTMENT**

On November 23, 2007, a federal grand jury in the Southern District of California returned a one-count Indictment charging Jose Raymundo Contreras-Hernandez ("Defendant") with Deported Alien Found in the United States, in violation of Title 8, United States Code, Section 1326. The Indictment further alleged that Defendant had been removed from the United States subsequent to October 28, 2005.

**B.   TRIAL STATUS**

Trial is scheduled for May 13, at 9:00 a.m., before the Honorable John A. Houston. The Government estimates that its case-in-chief will last approximately one day.

**C.   DEFENSE COUNSEL**

Defendant is represented by appointed counsel, Candis Mitchell of Federal Defenders of San Diego, Inc.

**D.   DEFENDANT'S CUSTODY STATUS**

Defendant is in custody.

**E.   INTERPRETER**

The Government does not require the assistance of an interpreter for any of its witnesses, but Defendant may require an interpreter.

**F.   JURY WAIVER**

Defendant has not waived trial by jury.

**G.   PRE-TRIAL MOTIONS AND MOTIONS IN LIMINE**

On December 18, 2007, Defendant filed motions for discovery and leave to file additional motions. On December 29, 2007, the Government filed motions for fingerprint exemplars and reciprocal

discovery.  On that same day, the Government filed its response in opposition to Defendant's motion for discovery.

On February 5, 2008, Defendant filed a motion to dismiss the indictment due to an invalid deportation and to suppress statements. On March 3, 2008, the Government filed its response in opposition. On March 10, 2008, the Court denied Defendant's motion to dismiss the indictment, finding that Defendant's prior conviction constitutes an aggravated felony.  The Court also denied the Defendant's motion to suppress field admissions made by Defendant.  The Court further ruled that, to the extent that statements were made after six hours following Defendant's arrest, an evidentiary hearing should be held. Because no statements were made after six hours, no evidentiary hearing was held.

On March 29, 2008, Defendant filed Motions in Limine to (1) compel the Government to prove the validity of the deportation to the jury; (2) exclude evidence not produced in discovery; (3) exclude documents absent redaction; (4) preclude testimony from Government witnesses referring to Defendant as an "Alien;" (5) provide inspection or production of certified documents; (6) preclude introduction of "mug shots" of Defendant; (7) prohibit the certificate of nonexistence of record as inadmissible; (8) preclude evidence under Federal Rule of Evidence 404(b) and 609; (9) allow attorney-conducted voir dire; (10) order production of grand jury transcripts; (11) preclude documents of deportation as evidence of alienage; and (12) grant leave to file additional motions.  On April 7, 2008, the Government its response in opposition.

On April 14, 2008, the Court held a motions in limine hearing. The Court denied Defendant's motion to compel the Government to prove

1  the validity of the deportation; granted, except for a certificate of
2  nonexistence, Defendant's motion to exclude evidence not produced in
3  discovery; ordered the Government to redact certain documents; ordered
4  that Government witnesses address Defendant as "Defendant;" granted
5  Defendant's motion to inspect documents before trial; denied motion
6  that certificate of nonexistence is inadmissible; denied motion to
7  exclude Government from using 609 impeachment evidence; granted motion
8  for attorney-conducted voir dire; denied motion to produce grand jury
9  transcripts; denied motion to preclude Government from using
10 immigration documents to prove alienage; and granted Defendant's
11 motion to file additional motions so long as they are based on newly
12 discovered evidence.

**H.    STIPULATIONS**

The Government and Defendant have not entered into any stipulations.

**I.    DISCOVERY**

The Government has complied with its discovery obligations. Defendant has not provided reciprocal discovery.

**II**

**STATEMENT OF FACTS**

**A.    THE INSTANT OFFENSE**

On October 27, 2007, United States Supervisory Border Patrol Agent Mark E. Noland was conducting assigned patrol duties in the Campo Border Patrol Stations area of operations. At approximately 3:00 a.m., Agent Noland responded to a seismic intrusion device located on a trail known to be used by illegal aliens to further their illegal entries into the United States. The seismic intrusion device is located approximately nine miles east of the Tecate, California

1  Port of Entry and approximately 13 miles north of the United
2  States/Mexico international boundary.
3       Upon arriving at the location of the seismic intrusion device,
4  Agent Noland observed fresh footprints headed in a northbound
5  direction. Agent Noland followed the footprints north until he came
6  upon a group of ten individuals attempting to conceal themselves.
7  Agent Noland identified himself as a United States Border Patrol
8  agent. He then questioned each individual regarding his/her
9  immigration status. All ten individuals, including Defendant, stated
10 that they were citizens and nationals of Mexico without any documents
11 to allow them to enter or remain in the United States legally.
12 Defendant and the other nine individuals were taken into custody and
13 transported to the Campo, California Border Patrol Station.
14      At the station, Defendant's personal information was entered
15 into immigration and criminal history databases. Defendant's identity
16 was confirmed, along with his criminal and immigration histories.
17      At approximately 3:00 p.m., Agents informed Defendant of his
18 Miranda rights. Defendant invoked those rights. No questions were
19 asked of Defendant.
20 **B.    DEFENDANT'S IMMIGRATION HISTORY**
21      Defendant is a citizen and native of Mexico. On September 26,
22 2007 an Assistant Field Office Director of Immigration and Customs
23 Enforcement ordered Defendant removed from the United States to Mexico
24 pursuant to a Final Administrative Removal Order. On September 27,
25 2007, Defendant was physically removed from the United States to
26 Mexico through the Calexico, California Port of Entry.
27 //
28 //

1 **C.   DEFENDANT'S CRIMINAL HISTORY**

2       Defendant was convicted of Solicitation to Commit Murder, in
3 violation of California Penal Code Section 653F(B) by a California
4 Superior Court in Santa Cruz, California on October 28, 2005. The
5 court sentenced him to serve six years in custody.

**III**

**PERTINENT LAW**

**A.   ELEMENTS OF 8 U.S.C. §1326**

       The Government must prove each of the following elements beyond
a reasonable doubt:

   1.   Defendant was deported from the United States;

   2.   After deportation, Defendant voluntarily entered the
        United States;

   3.   When Defendant entered he knew he was entering the
        United States or after the defendant entered the
        United States he knew that he was in the United
        States and knowingly remained;

   4.   Defendant was found in the United States without
        having obtained the consent of the Attorney General
        or the Secretary of the Department of Homeland
        Security to reapply for admission into the United
        States; and

   5.   Defendant was an alien at the time of the
        defendant's entry into the United States.

       See 9th Cir. Model Crim. Jury Instructions 9.5B (2007); see
also United States v. Salazar-Gonzalez, 458 F.3d 851, 856 (9th Cir.

2006).[1]

## IV

## **WITNESS LIST**

The Government reserves the right to add, omit, substitute, or change the order of witnesses. Presently, the Government intends to call the following witnesses during its case-in-chief:

1. Border Patrol Agent Mark E. Noland
2. Border Patrol Agent Ronald Ewers
3. Immigration Enforcement Agent Daniel Weiche
4. Fingerprint Expert David Beers
5. A-File Custodian Sean Braud

## V

## **EXHIBIT LIST**

The Government will provide a complete exhibit list prior to trial. The Government requests that Defendant examine the Government's exhibits before trial to expedite the proceedings. The Government further requests an opportunity to examine Defendant's exhibits before trial. Presently, the Government intends to offer into evidence the following exhibits:

1. Map of Apprehension Area
2. Photographs of Apprehension Area
3. Fingerprint card from instant arrest, dated October 27, 2007
4. Notice of Intent to Issue a Final Administrative Removal Order, dated September 25, 2007

---

[1] The Government will request a special verdict form indicating that the Defendant was removed subsequent to October 28, 2005. See United States v. Jose Covian-Sandoval, 462 F.3d 1090 (9th Cir. 2006).

1    5.   Final Administrative Removal Order, dated September 26, 2007
2    6.   Warrant of Removal, dated September 27, 2007
3    7.   Certificate of Non-Existence of Record

## VI

## OTHER LEGAL ISSUES

**A.   EXPERT TESTIMONY**

The Government intends to call as a witness a fingerprint expert, David Beers, for the purpose of identifying Defendant as the person who was previously deported. Such expert testimony should be admitted to assist the jury in understanding that this Defendant is an alien who was found in the United States after having been deported. See Federal Rule of Evidence 702; United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). The Government has provided written notice of its intention to use expert testimony. This notice also included a written summary of testimony the Government intends to use pursuant to Federal Rules of Evidence 702, 703, and 705, during the trial in the above-referenced criminal matter. Accordingly, such evidence is proper and should be admitted.

**B.   609 EVIDENCE**

The Government intends to use Defendant's felony conviction as impeachment evidence pursuant to Federal Rule of Evidence 609. It is the Government's position that if Defendant takes the stand, he would do so to dispute at least one of the elements of the charges brought against him, and therefore, his credibility would be at issue. In addition, evidence of the convictions would be relevant to refute any claim that Defendant was not subject to deportation.

**C.     A-FILE DOCUMENTS AND WITNESS**

The Government intends to offer documents from the "A-File" maintained by the Department of Homeland Security and its predecessors that corresponds to Defendant's name in order to establish Defendant's alienage, prior deportation, and that he was subsequently found in the United States without having sought or obtained authorization from the Attorney General. The documents are self-authenticating under Fed. R. Evid. 902(1), 902(4), and 902(11), and are exceptions to the hearsay rule as "public records," or, alternatively, "business records." See Fed. R. Evid. 803(8)(B) and 803(6). The Ninth Circuit has addressed the admissibility of A-File documents in United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997). There, Loyola-Dominguez appealed his §1326 conviction, arguing, among other issues, that the district court erred in admitting at trial certain records from the illegal immigrant's "A-File." Id. at 1317. The district court had admitted: (1) a warrant of deportation; (2) a prior warrant for the defendant's arrest; (3) a prior deportation order; and (4) a prior warrant of deportation. Loyola-Dominguez argued that admission of the documents violated the rule against hearsay, and denied him his Sixth Amendment right to confront witnesses. The Ninth Circuit rejected his arguments, holding that the documents were properly admitted as public records. Id. at 1318. The court noted that documents from a defendant's immigration file, although "made by law enforcement agents . . . reflect only 'ministerial, objective observation[s]' and do not implicate the concerns animating the law enforcement exception to the public records exception." Id. (quoting United States v. Hernandez-Rojas, 617 F.2d 533, 534-35 (9th Cir. 1980)). The court also held that such documents are self-

authenticating and, therefore, do not require an independent foundation. Id.

While Loyola-Dominguez constitutes a fairly recent restatement of the rules governing public and business records, courts in this Circuit have also consistently held that documents from a defendant's immigration file are admissible in a §1326 prosecution to establish the defendant's alienage and prior deportation. See United States v. Mateo-Mendez, 215 F.3d 1039, 1042-45 (9th Cir. 2000) (confirming district court's decision to admit certificate of nonexistence); United States v. Contreras, 63 F.3d 852, 857-58 (9th Cir. 1995) (affirming admission of warrant of deportation, deportation order and deportation hearing transcript); United States v. Hernandez-Rojas, 617 F.2d 533, 535 (9th Cir. 1980) (holding that district court properly admitted warrant of deportation as public record); United States v. Dekermenjian, 508 F.2d 812, 814 n.1 (9th Cir. 1974) (finding that district court properly admitted "certain records and memoranda of the Immigration and Naturalization Service" as business records and noting that such documents would also be admissible as public records).

The Government intends to call United States Border Patrol Agent Sean Braud in its case in chief. Although Agent Braud will not give expert opinions based upon specialized knowledge, he will testify regarding documents contained in Defendant's A-File. See Fed. R. Evid. 701 (such testimony is "helpful to a clear understanding of the determination of a fact in issue"); United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995) (finding, with regard to testimony in a drug case, that "[t]hese observations are common enough and require such a limited amount of expertise, if any, that they can, indeed, be deemed lay witness opinion"); United States v. Loyola-Dominguez, 125

1  F.3d 1315, 1317 (9th Cir. 1997) (affirming testimony of agent who
2  "served as the conduit through which the government introduced
3  documents from INS' Alien Registry File").  Here, Agent Braud will
4  testify regarding the purpose of the A-File, what documents are
5  contained within the A-File, and will explain those documents.  Agent
6  Braud will also testify to results of database searches that he
7  personally conducted to determine whether Defendant applied for or
8  obtained authorization from the Attorney General of the United States
9  to apply to enter, or to enter, into the United States.  As the
10 Government indicated in its motions <u>in limine</u>, such testimony is
11 proper in a §1326 case.

**D.    <u>ALIENAGE</u>**

The Ninth Circuit has held that "deportation documents are admissible to prove alienage under the public records exception to the hearsay rule."  <u>United States v. Hernandez-Herrera</u>, 273 F.3d 1213, 1218 (9th Cir. 2001).  The Ninth Circuit also has described the type of documents that may be used as evidence of alienage:

> Although neither a deportation order, <u>see United States v. Sotelo</u>, 109 F.3d 1446, 1449 (9th Cir. 1997) (citing <u>United States v. Ortiz-Lopez</u>, 24 F.3d 53, 55 (9th Cir. 1994)), nor the defendant's own admissions, <u>see United States v. Hernandez</u>, 105 F.3d 1330, 1332 (9th Cir. 1997), standing alone, will support the conclusion that a defendant is an alien, here the government offered Ramirez-Cortez's prior <u>deportation order</u>, <u>admissions Ramirez-Cortez made in his underlying deportation proceeding</u>, and the testimony of an INS agent that his review of Ramirez-Cortez's immigration records reflected that Ramirez-Cortez was an alien.  Based on this evidence, a rational trier of fact could have found beyond a reasonable doubt that Ramirez-Cortez was an alien. <u>Cf.</u> <u>United States v. Sotelo</u>, 109 F.3d 1446, 1449 (9th Cir. 1997) (finding sufficient evidence of alienage where the government's evidence consisted of a prior <u>deportation order</u>, the defendant's admissions to an INS agent that he was a Mexican citizen, and his <u>admissions during the deportation hearing</u> that he was not a United States citizen); <u>United States v. Contreras</u>, 63 F.3d 852, 858 (9th Cir. 1995) (holding that sufficient evidence supported the conviction

1    when the government introduced a prior <u>deportation order</u>, the
     <u>deportation hearing transcript</u>, which indicated that the
2    defendant admitted his Mexican citizenship under oath, and
     testimony of an INS agent that the defendant was a Mexican
3    citizen).

4  <u>United States v. Ramirez-Cortez</u>, 213 F.3d 1149, 1158 (9th Cir. 2000)

5  (emphasis added).

6         The Ninth Circuit has also affirmed the admission of Orders to

7  Show Cause, <u>see</u> <u>Sotelo</u>, 109 F.3d at 1449, admissions made during

8  deportation hearings, <u>see</u> <u>id.</u>, and transcripts, <u>see</u> <u>Contreras</u>, 63

9  F.3d at 858.  In <u>Sotelo</u>, the Ninth Circuit described a list of

10 evidence that was admitted at trial which supported a defendant's

11 §1326 conviction:

12     The prosecution also presented several documents from the
       prior deportation proceeding. During the <u>deportation
13     hearing</u>, Sotelo admitted, through his lawyer, allegations in
       the order to show cause that he is not a citizen or national
14     of the United States and he is a native and citizen of
       Mexico. The prosecution presented the <u>order to show cause</u>
15     and an <u>advisement of rights form</u>, which Sotelo signed. The
       advisement of rights form stated that Sotelo admitted he was
16     in the United States illegally. Finally, the prosecution
       presented the order of deportation and the warrant of
17     deportation, evidencing Sotelo's actual deportation.

18 <u>Sotelo</u>, 109 F.3d at 1449 (emphasis added).

19 **E.    PHYSICAL REMOVAL**

20         The Ninth Circuit has held that deportation "refers to the

21 removal from the country of aliens who are physically present in the

22 United States."  <u>United States v. Romo-Romo</u>, 246 F.3d 1272, 1275-76

23 (9th Cir. 2001); <u>see also</u> <u>United States v. Luna-Madellaga</u>, 315 F.3d

24 1224, 1227 (9th Cir. 2003) (holding that §1326 speaks only of

25 "removal" and that the statute "plainly turns on the alien's physical

26 removal -- not the order of removal").  Thus, the Government need only

27 prove beyond a reasonable doubt that Defendant physically left the

28 country sometime between the time he was ordered deported and the time

he was found in the United States. See United States v. Bahena-Cardenas, 411 F.3d 1067, 1074-75 (9th Cir. 2005).

**F.    EXPRESS CONSENT**

The Ninth Circuit has stated what is required for permission to reapply:

> The INS has promulgated regulations that govern the process by which the Attorney General will "[c]onsent to [a deported alien] reapply[ing] for admission[.]" 8 C.F.R. §212.2. These regulations include the requirement that a deported alien must have remained outside of the United States for a minimum of five consecutive years. Id. §212.2(a). Pina-Jaime did not meet this requirement. Nor did he submit the required form I-212 to the INS to obtain consent of the Attorney General to reapply for admission. [Citations omitted.] Accordingly, the Attorney General did not "expressly consent[ ] to [Pina-Jaime's] reapplying for admission" as required by the statute. See 8 U.S.C. §1326(a)(2).

United States v. Pina-Jaime, 332 F.3d 609, 611-12 (9th Cir. 2003). As in Pina-Jaime, there is no evidence in this case that Defendant has properly sought or actually obtained permission to enter the United States. As a result, any cross-examination regarding the lack of permission is irrelevant. United States v. Rodriquez-Rodriquez, 393 F.3d 849, 856 (9th Cir. 2005), is instructive in that regard. In Rodriquez-Rodriquez, the defendant sought to elicit testimony on cross-examination from a witness for the United States regarding the following claims:  (1) INS computers are not fully interactive with other federal agencies' computers; (2) over 2 million documents filed by immigrants have been lost or forgotten; (3) other federal agencies have the ability and authority to apply for an immigrant to come into the United States; and (4) the custodian never checked with the other federal agencies to inquire about documents relating to the defendant. Judge Lorenz sustained objections to this line of cross-examination

finding that it was irrelevant.  Id.  The Ninth Circuit agreed stating that "[n]one of that information is relevant on the facts of this case, because it is uncontested that [the defendant] never made any application to the INS or any other federal agency."  Id.  Here, as in Rodriquez, Defendant has not presented any evidence that he properly applied for reentry.

**G.      LAWFULNESS OF PRIOR DEPORTATION**

Since physical removal is all that is required, the lawfulness of a defendant's prior deportation is not an element of the offense under §1326 and should not be presented to the jury.  See United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996) (en banc).  The Government need only prove that a deportation proceeding actually occurred and that the defendant was consequently deported. United States v. Medina, 236 F.3d 1028, 1031 (9th Cir. 2001).

**H.      DUPLICATES**

A duplicate is admissible to the same extent as an original unless:  (1) a genuine question is raised as to the authenticity of the original; or (2) under circumstances, it would be unfair to admit the duplicate instead of the original.  See Fed.R.Evid. 1003.

**VII**

**PROPOSED VOIR DIRE**

The Government requests that the following voir dire questions be addressed to the jury panel in addition to the Court's standard jury questions:

1.   Of those of you who have sat on criminal juries, whose jury has not reached a unanimous verdict?

2.   Has anyone gone through a Border Patrol checkpoint or been referred to secondary inspection at a port of entry?

3.   Has anyone had any disputes with any agency of the United

States Government?

4. Have you, your relatives, or your close friends been investigated, arrested, accused, or charged with a crime?

5. Does anyone believe that the United States Government should not patrol the border it shares with Mexico?

6. Does anyone have strong feelings about Border Patrol or Department of Homeland Security?

7. Have you been following stories in the news about proposed immigration law reform, the activities of the minute men and protests surrounding their activities, or the proposed guest worker program?

8. Has anyone gone through, or helped someone go through, the process of applying for residency or citizenship?

9. Does anyone believe that it should <u>not</u> be illegal to enter the United States without authorization?

10. Does everyone understand that as a juror your duty is to apply the law regardless of whether you disagree with it?

11. Is anyone a member of a group, or have an affiliation with a group, that advocates a position on immigration issues?

12. Does anyone have religious or moral beliefs which will make it difficult for him/her to make a decision strictly based on the law and facts of this case?

The Government respectfully reserves the right to submit additional questions prior to trial.

## VII

## **JURY INSTRUCTIONS**

The Government will provide the Court with a set of proposed instructions under separate cover.

DATED: April 30, 2008.

                                   Respectfully submitted,

                                   KAREN P. HEWITT
                                   United States Attorney

                                   /s/ ***Peter J. Mazza***
                                   PETER J. MAZZA
                                   Assistant United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 07CR3190-JAH |
| ) | |
| Plaintiff, ) | |
| ) | CERTIFICATE OF SERVICE |
| v. ) | |
| ) | |
| JOSE REYMUNDO ) | |
| CONTRERAS-HERNANDEZ, ) | |
| ) | |
| Defendant. ) | |
| ) | |

IT IS HEREBY CERTIFIED THAT:

    I, Peter J. Mazza, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

    I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S TRIAL MEMORANDUM** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    Candis Mitchell of Federal Defenders of San Diego, Inc.

    I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

    None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on April 30, 2008.

                                    /s/ ***Peter J. Mazza***
                                    PETER J. MAZZA